**Donald DORNAN, et al. Plaintiffs,**

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, et al., Defendants.**

**No. 86–CV–40127–FL.**

United States District Court,
E.D. Michigan, S.D.
at Flint.

April 11, 1986.

Darrell M. Amlin, Detroit, Mich., for plaintiffs.

C. Douglas Lovett, Cleveland, Ohio, Donald W. Fisher, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is plaintiffs' Motion for a Preliminary Injunction heard on April 9, 1986.[1] The determinative issue in this case is clear and quite novel. Did the November 1985 action of President Carlough constitute an increase in current dues, or merely the setting of new dues?

### FACTS

The uncontested facts are as follows: On November 5, 1985, Edward Carlough, General President of the Sheet Metal Workers' International Association consolidated five local unions into a single local, that being local union No. 7. The consolidation was done in accordance with Article 3, Section 2g of the International Constitution. *See* Exhibit A to plaintiffs' Complaint. In so doing, President Carlough set the dues rate at $30.00 per month plus 2% of all hours of work for that month. *See* Exhibit B to plaintiffs' Complaint. This dues structure was different from that used in the former locals and would probably result in increased dues being paid. On March 27, 1986, plaintiffs filed the instant action challenging the validity of President Carlough's dues rate. Plaintiffs sought both a temporary restraining order and a preliminary injunction as a means of preventing defendants from disciplining those members who had not paid the dues owing under President Carlough's rate. The next day, this Court entered a temporary restraining order which granted the relief plaintiffs requested on the condition that the members pay the flat $30.00 figure to the union and pay the 2% assessment into an escrow account. As of the time of the hearing, fewer than 20 members had not done so. Finally, during the hearing, defendants' counsel notified the Court that a special meeting was going to be held so that the members of Local No. 7 could vote on three alternative dues rates proposed by the International, and that the ballot would

---

1. Based on the oral stipulation of the parties, trial of this action was consolidated with the hearing for injunctive relief, in accordance with Fed.R.Civ.P. 65(a)(2).

also contain any other proposed dues rate properly presented by a member.

ANALYSIS

29 U.S.C. § 411(a)(3) provides:

Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot ...

To determine whether this action is governed by § 411(a)(3) as plaintiffs contend, this Court must determine whether the dues rate set by President Carlough was an "increase" of existing dues. In order to make *that* determination, it must be determined whether Local No. 7 is a new union or merely a continuation of the old local unions in new form. As both sides agree, the Court is dealing with an issue of first impression.

As a starting point, President Carlough's letter of November 5, 1985 is helpful. The letter states in pertinent part:

This is to advise you that pursuant to the authority vested in me under Article Three (3), Section 2(g) of the International Constitution, I am, effective November 1, 1985, amalgamating Local Union 360 (Lansing, Michigan), Local Union 408 (Saginaw, Michigan), Local Union 410 (Grand Rapids, Michigan), and Local Union 18 (Upper Peninsula, Michigan Only) into a single consolidated local union to be chartered and designated as Local Union No. 7.

Both the terms "amalgamating" and "consolidated" contemplate the termination of previously unrelated parts and the creation of a new entity made up of those parts (as opposed to the term merger, for example, which contemplates the survival of one component part). The Court would be remiss if it stopped here, however, for while analyzing the terms used is helpful, it is not determinative. The effect of President Carlough's action must also be reviewed. In his November 5th letter, President Carlough names new officers and directs that all funds, books and records of the old locals be surrendered. In short, no remnants of the old locals survived the establishment of new Local 7. Therefore, the Court must conclude that in both form and in substance, a new local union was created.

This does not end the inquiry, however. The Court must still determine whether the establishment of a new dues rate without prior vote of the new local's membership is inconsistent with the act's policy favoring the democratic rule of labor unions. As the Court understands it, the membership of the new local has the right to approve, alter, or eliminate President Carlough's dues rate by secret ballot. Indeed, such a vote apparently is being arranged at this time. Thus, so long as the membership can effectively determine the dues they will pay, the act's policy is not harmed. It is clear from the Constitution that President Carlough had the power to consolidate the locals into a new local. That power would be shallow indeed if he did not have the concomitant power to finance the new local. Clearly, the new local must be financed between the time of its creation and the time a vote on the dues rate takes place. If the dues rates of the old locals are insufficient to maintain the new local during this interim period, how else can the new local survive? If the new local cannot survive, what is left of the President's power to create it? Thus, as a practical matter, the conclusion seems inescapable that, so long as the members of the new local have the opportunity to set the dues rate via the democratic process, the President can, in exercising his power to consolidate existing locals into a new local, establish a "start up" dues rate.

## CONCLUSION

For the reasons set forth above, plaintiffs' complaint is DISMISSED [2] and judgment is HEREBY ENTERED on behalf of defendants. The funds currently held in escrow shall be turned over to the appropriate agent of the defendant International.

IT IS SO ORDERED.

2. The parties are hereby advised that plaintiffs shall have until June 15, 1986 to file a motion to reinstate and amend the complaint should the anticipated vote on the proposed dues rates not take place.